IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 23-CR-294 (RCL) |
| v. | 18 U.S.C. § 1752(a)(2) |
| KEVIN CLARDY, | *let this be filed.* |
| Defendant. | *Royce C. Lamberth* |
| | *U.S.D.J.  9/18/23* |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Thomas Riddle, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building

and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Thomas Riddle and Kevin Clardy traveled to Washington D.C. from South Carolina to attend the rallies there on January 6, 2021.

9. US Capitol CCTV footage captured Clardy and Riddle entering the U.S. Capitol at approximately 2:42 p.m. on that day through the Senate Fire door (also known as the Senate Parliamentarian door). They remained just inside the doorway for approximately 49 seconds before exiting the building through the same door.

10. Clardy and Riddle re-entered the building again through Senate Fire door at 2:44:28 p,m. Approximately 24 seconds later, they assisted a crowd attempting to break a door leading to office S131 by pushing up against rioters who were pushing against the door. They both entered that office with the crowd and exited the office through the same door approximately 50 seconds later. Clardy and Riddle lingered in front of the office for approximately 46 seconds before leaving the building again at 2:45

11. They re-entered the building at approximately a minute later through the Senate Fire door and entered office S131. They remained in office S131 for approximately 1 minute, exiting at 2:47:56. They linger in front of office S131 taking more photos until departing out the Senate Fire door at approximately 2:49 p.m.

12. On May 6, 2022, law enforcement interviewed both Riddle and Clardy. During the interviews, both admitted to going to Washington D.C. and entering the U.S. Capitol. Both acknowledge helping break open the office door. Both identified themselves in still images of CCTV videos when presented.

### *Elements of the Offense*

13. The parties agree that Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2), requires the following elements:

   a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.
c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Defendant's Acknowledgments*

14.   The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions in violation of 18 U.S.C. § 1752(a)(2).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   *s/ Joseph H. Huynh*
Joseph H. Huynh
Assistant United States Attorney
Capitol Siege Section (detailee)
U.S. Attorney's Office
District of Columbia
Telephone No: 541-465-6049
Email Address: joseph.huynh@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Kevin Clardy, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/21/2023

Kevin Clardy
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/23/23

Elizabeth A. Franklin-Best
Attorney for Defendant